**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

Case No. 6:14CV1754-O2L -41TBS

**RENUEN COPRPORATION**
1044 U.S. Highway 1 North, Suite 201
Jupiter, Florida 33477,

**J. CHARLES NEMES**
1044 U.S. Highway 1 North, Suite 201
Jupiter, Florida 33477,

**DONGJOON ALEXANDER KIM**
1044 U.S. Highway 1 North, Suite 201
Jupiter, Florida 33477

      Plaintiffs,

    v.

**JOHN L. LAMEIRA**
55 West Church St., #2402
Orlando, Florida 32801,

**AMERICA'S GREEN ENERGY
SOURCE, INC.**
207 W. SR 434, Suite B-C
Winter Springs, Florida 32708,

**AMERICA'S GREEN ENERGY
CONTRACTORS, INC.**
2731 Silver Star Road
Orlando, Florida 23808,

**CATHY J. LERMAN**
12180 NW 9th Place
Coral Springs, Florida 33071,

**STEVEN H. LERMAN**
12180 NW 9th Place
Coral Springs, Florida 33071,

**CATHY J. LERMAN, P.A.**
101 NE 3rd Avenue, Suite 1500
Ft. Lauderdale, Florida 33301,

                :
                : COMPLAINT FOR DAMAGES,
                : INJUNCTIVE RELIEF AND OTHER
                : RELIEF FOR VIOLATIONS OF 15
                : U.S.C. 1125(a); 18 U.S.C. 1962(c)
                : AND RELATED CLAIMS; JURY
                : DEMANDED

**WALTER G. KRITSKY**      :
8003 Birman Street       :
Maitland, Florida 32751,     :
               :
and              :
               :
**DOES 1-50,**         :

     Defendants.
_____

   Plaintiffs, RenuEn Corporation ("RenuEn"), J. Charles Nemes ("Nemes"), and Dongjoon

Alexander Kim ("Kim") (collectively, "Plaintiffs"), respectfully state the following for their

complaint against Defendants, John L. Lameira ("Lameira"), America's Green Energy Source,

Inc. ("AGES"), America's Green Energy Contractors, Inc. ("AGEC"), Cathy J. Lerman ("Ms.

Lerman"), Steven J. Lerman ("Mr. Lerman"), Cathy J. Lerman, P.A. (the "Lerman Law Firm"),

Walter G. Kritsky ("Kritsky"), and Does 1-50 (collectively, "Defendants"), for false advertising

and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125, civil violation

of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, defamation,

defamation per se, tortious interference with contractual business relations, violation of Florida's

Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.211, aiding and abetting tortious

conduct, and civil conspiracy.

## PARTIES, JURISDICTION, AND VENUE

   1.  Plaintiff RenuEn is a corporation, organized under the existing laws of the State

of Florida, with its principal place of business located in Jupiter, Florida. RenuEn focuses on the

sale and installation of energy saving products and services for residential and commercial

clients. RenuEn also does business under the name Energy Solutions of Florida, using the names

2

"RenuEn Corporation," "RenuEn," "Energy Solutions of Florida," "Energy Solutions by RenuEn," and "Energy Solutions" in commerce.

2.      Plaintiff J. Charles Nemes is a natural person residing in Singer Island, Florida. Nemes is the Chief Executive Officer of RenuEn.

3.      Plaintiff Dongjoon Alexander Kim is a natural person residing in Jupiter, Florida. Kim is the Chief Legal Officer of RenuEn.

4.      Defendant Lameira is a natural person residing in Orlando, Florida. Lameira also goes by the alias John Varga. At all times material hereto, Lameira was an owner of AGES and listed as its registered agent and principal.

5.      Defendant AGES is, and at all times material to this action has been, a Florida corporation with its principal place of business in Winter Springs, Florida. AGES is engaged in the business of marketing and selling renewable energy and energy efficiency related products on behalf of other companies holding professional license(s) to sell and install such products. These products include solar electric panels and systems, solar domestic water heaters, attic insulation and high efficiency HVAC systems.

6.      Defendant America's Green Energy Contractors, Inc. ("AGEC") is, and at all times material to his action been a Florida corporation with its principal place of business in Orlando, Florida. Like AGES, AGEC is controlled by defendant Lameira and in the business of marketing and selling renewable energy efficiency related products. Upon information and belief, AGES and AGEC are controlled by and employ the same individuals. Throughout this Complaint, all actions attributed to AGES are also attributable to AGEC.

7.    Defendant Cathy Lerman is a natural person residing in Coral Springs, Florida. Ms. Lerman is an attorney in the Coral Springs, Florida area and married to defendant Steven Lerman.

8.    Defendant Steven Lerman is a natural person residing in Coral Springs, Florida. Mr. Lerman is a detective with the Coral Springs Police Department and married to defendant Cathy Lerman.

9.    Defendant Lerman Law Firm is, and at all times material to his action been a Florida corporation with its principal place of business in Ft. Lauderdale, Florida.

10.   Defendant Kritsky is a natural person residing in Maitland, Florida. Kritsky was a former business partner and license qualifier of RenuEn.

11.   Upon information and belief, Does 1-50 are natural persons and/or corporations or other business entities whose identities are currently unknown. Does 1-50 have conspired and joined with the other Defendants named in this action to form a criminal enterprise involved in tortiously interfering with RenuEn's current and prospective business relations and engaging in a multifaceted smear campaign to defame and ruin the reputations of Plaintiffs, and bring pecuniary gain to the Defendants. Does 1-50 have participated in this scheme by, among other things, posting false statements on various websites including, but not limited to, www.ripoffreport.com, www.facebook.com, www.twitter.com, www.pissedconsumer.com, www.scamorg.com, http://investorshub.advfn.com, http://lermanfirm.com, www.skyrock.com, www.scam.com, and www.weebly.com.

12.   This Court has federal question jurisdiction over this action pursuant to the provisions of 28 U.S.C. § 1331 because this is a civil action that arises under the Constitution and the laws of the United States; the provisions of 28 U.S.C. § 1338 because this is a civil

action arising under an Act of Congress relating to trademarks; the provisions of 15 U.S.C. § 1125; civil Racketeer Influenced and Corrupt Organizations Act; and the provisions of 18 U.S.C. § 1962.

13.    The Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to the provisions of 28 U.S.C. § 1367.

14.    Venue is proper in this District and this Division under, without limitation, 28 U.S.C. §§ 1391(b)(1) & (2)  because several defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District and this Division.

## FACTUAL ALLEGATIONS

### Nature of Action

15.    This action involves the termination of one of RenuEn's business partners and that terminated party's subsequent attempts to destroy RenuEn and steal its business.  The terminated party's scheme to destroy RenuEn eventually grew into a massive online smear campaign targeting not only RenuEn, but its employees, shareholders, and anyone else associated with the company.  What started as a petty attack by a jilted business quickly snowballed to include multiple other parties, including a local attorney and her police-officer husband.  As a result of these attacks, RenuEn suffered substantial damages and has seen its growing business contract.  Plaintiffs file this Complaint to seek recovery of the damages caused by Defendants' acts and to enjoin Defendants from further illegal conduct.

## RenuEn's Dealer Agreements

16.     RenuEn is and was at all times a contractor and engaged in the business of selling and installing renewable energy and energy efficiency related products, at times marketed and sold by third party sales and marketing companies. These products include solar electric panels and systems, solar hot water heaters, attic insulation and high efficiency Solar Cool HVAC systems. The outsourced sales companies ("Dealers") would recruit, hire and employ sales and marketing representatives to market and sell products offered for installation by RenuEn. Through the Dealers' effort they would market and set appointments for their sales representatives who would make presentations to consumers about the products. The consumers would purchase products and sign a contract, permit related documents and a credit application. The contract would be submitted to the Dealer management for review. After approval, the Dealer would then send a scanned copy of all the paperwork to RenuEn for processing and installation.

17.     RenuEn's products and services are marketed, sold, and installed in a very specific manner.

18.     Prior to July 11, 2014, RenuEn contracted with various marketing companies as Dealers to sell its products. These Dealers had the responsibility to solicit customers and complete the resulting sales. At all times the Dealers were required to comply with RenuEn's rules and regulations and enter into a written agreement with RenuEn.

19.     Dealers had the responsibility for marketing and selling RenuEn's products and services. After a Dealer had completed a sale, RenuEn would enlist a subcontractor or engage one of its own subsidiaries, employees, or subcontractors to install the product(s) at the

customer's home. The subcontractor or RenuEn employee would travel to the customer's home and install the products ordered by the customer.

20. After a sale was completed, installed, and paid for by the customer, RenuEn would pay a Dealer a fee for each such sale.

21. As explained below, RenuEn was eventually forced to cease using Dealers to market and sell its products as the result of certain Dealers' unscrupulous sales tactics.

<u>RenuEn Relies On Its Customers Receiving Outside Financing</u>

22. The vast majority of customers who purchase RenuEn's products wish to finance their purchase and make monthly payments until the products are paid off. RenuEn has depended on various financing partners, including Greensky Credit and Aqua Finance, to issue loans to its customers.

23. Typically, RenuEn receives payment from these financing partners when the customer is approved for the loan and this payment is usually disbursed upon installation of the contracted services. The customer then makes monthly payments to the financing company until the debt is paid off. Without this source of funding for its customers, RenuEn's business is put in peril for lack of adequate cash flow. RenuEn would essentially cease operating as a viable business without financing companies providing loans to its customers and paying RenuEn for the sales.

24. After the products are purchased and installed pursuant to a RenuEn contract, the customer can contact RenuEn if there are any problems with the products. This includes general questions, service calls, warranty, and replacement of the product, if necessary.

<u>RenuEn's Relationship With AGES And John Lameira</u>

25.     One Dealer who contracted with RenuEn to sell RenuEn's products and services was AGES.  On or about January 19, 2014, Lameira, acting as Director/Secretary of AGES, executed a Sales and Distribution Agreement between RenuEn and AGES.

26.     Unbeknownst to RenuEn, Lameira was instructing AGES employees to make sales by using dishonest sales tactics, such as making oral misrepresentations regarding the savings customers could expect on their energy bills, utility rebates, and the tax benefits they could receive as a result of installing energy efficient products.  These misrepresentations eventually led to several customer complaints to RenuEn about AGES sales representatives.

27.     On or about July 11, 2014, RenuEn received a copy of a text message and/or email sent by Lameira to AGES employees.  This message informed AGES employees that Lameira had been in a "7 hour meeting with [AGES's] Attorney & CPA," that "ALL BASES ARE COVERED LEGALLY AND FINANCIALLY," and that AGES's new business plan was "good to go next Tuesday."  Lameira then informed AGES's employees of his intention to harm RenuEn, stating that he "was trained by the absolute best how to build a company and *also how to tear one down*."

28.     Upon receiving Lameira's threatening message, RenuEn's Chief Legal Officer, Alex Kim, sent an email to Lameira on July 11, 2014 informing Lameira and AGES that it was in receipt of his message and that it was also aware that AGES had been meeting with other potential suppliers.  Kim informed Lameira that unless RenuEn received written confirmation by 6:00 pm on July 11, 2014 that the message did not originate from Lameira and that AGES was not planning to terminate its agreement with RenuEn on Tuesday, July 15, 2014, the letter from Kim would serve as official notice of RenuEn's intent to terminate the Sales and Distribution Agreement between RenuEn and AGES, effective July 11, 2014 at 11:59 P.M.

29.     Neither Lameira nor AGES provided the requested written assurances.  As such, the Sales and Distribution Agreement between RenuEn and AGES was terminated on July 11, 2014.

30.     With the termination of the Sales and Distribution Agreement, no further relationship existed between RenuEn and AGES.

### Lameira and AGES Falsely Represent Themselves As Selling RenuEn Products

31.     Despite the termination of their contractual relationship and RenuEn's instruction to Lameira that neither he nor AGES was allowed to sell RenuEn products or contact RenuEn customers without prior authorization, Lameira allowed AGES's sales representatives  to continue selling and signing customers on RenuEn's contracts and paperwork.

32.     After the July 11, 2014 termination of its dealer agreement, AGES and its sales representatives signed approximately ten to fifteen contracts with RenuEn customers.  Two such customers were Mary Lou Dolan ("Ms. Dolan") and Stanley Burns ("Mr. Burns").  These customers were presented with RenuEn's marketing materials explaining the products and services provided by RenuEn.  They then each signed RenuEn contracts and paperwork clearly designating RenuEn/Energy Solutions as the company doing business with them.  Because RenuEn had terminated its dealer agreement with AGES, AGES was not permitted to hold itself out as a RenuEn Dealer.

33.     Subsequently, Lameira directed AGES's sales representatives, such as Tara Radcliff, to call RenuEn's customers and inform them that they needed to sign additional paperwork to complete their sales with RenuEn.  AGES employees then revisited RenuEn's customers and misled them into signing another contract.  Specifically, AGES employees

contacted Ms. Dolan and Mr. Burns and stated that they needed to sign new finance applications, baiting them with the promise of lower monthly payments.

34.     Lameira and AGES did not inform these customers that they were signing a contract with a company other than RenuEn. Instead, the customers were told that they were simply being given a better deal on financing and had to sign new paperwork in order to take advantage of new financing rates. In reality, the RenuEn contracts were switched out with contracts for a company named Sunlight Solar in order for AGES to directly receive the full sale amount disbursed from Sunlight Solar's finance company, Carmel Financial. As a result of AGES's misrepresentations, upon information and belief, these customers believed that they were still doing business with RenuEn, when in fact they signed contracts for non-RenuEn products and services and for payment to non-RenuEn entities. This deception caused consumer confusion and directed RenuEn's customers and their funds away from RenuEn.

35.     One such customer, Norman Sepulveda, signed a contract with and wrote a check to RenuEn on July 12, 2014. Shortly thereafter, AGES employee Dale Prine convinced the customer he was signing "new finance documents," but in reality Sepulveda was signing new contracts for Sunlight Solar products. Prine then convinced Sepulveda to issue a check to Sunlight Solar. Prine proceeded to give the new check to Lameira who promptly deposited the check into an AGES checking account without the knowledge or consent of Sunlight Solar or RenuEn.

36.     In addition to wrongfully holding itself out as offering RenuEn's products and services to customers after the termination of its dealer agreement, AGES also falsely represented itself as Energy Solutions, which is the d/b/a of RenuEn. For example, the Energy Solutions logo adorned the front door of the AGES office and was displayed on the homepage of

10

the AGES website. Moreover, the Energy Solutions license number was displayed on the homepage of the AGES website. Additionally, AGES offered customers certificates for free pizza ("pizza certificates") using RenuEn's name and logo.

37.     Furthermore, on July 3, 2014—a time when AGES was already secretly competing against RenuEn—an AGES employee named Dale Prine, using the email address agesopportunities@gmail.com, passed himself off as "VP of Dealer Development for Energy Solutions, a RenuEn company" in an advertisement for an AGES webinar. Mr. Prine was not a RenuEn employee.

38.     Upon information and belief, other AGES employees also misrepresented themselves as RenuEn employees in an attempt to mislead RenuEn's potential customers to do business with AGES and to mislead sales persons into taking jobs with AGES rather than with RenuEn.

### AGES And John Lameira Begin Efforts To Damage RenuEn's Reputation

39.     Although AGES had been secretly competing with RenuEn prior to July 11, 2014, after that date, AGES was openly in direct competition with RenuEn for the sale and installation of renewable energy and energy efficiency related products.

40.     As a competitor of RenuEn, AGES began a concerted effort to harm RenuEn's reputation, interfere with RenuEn's contractual relationships, and increase its own market share through these acts.

41.     As stated above, Lameira directed AGES employees to contact RenuEn's customers and falsely state that they needed to sign new paperwork. He also directed at least one AGES employee to contact county governments and falsely accuse RenuEn of engaging in the installation of equipment without the proper license and/or permits. Additionally, Lameira

11

directed Nick Holt ("Holt"), AGES's former Chief Operating Officer, to create a collection of documents disparaging RenuEn's CEO, Nemes, and accusing RenuEn of engaging in illegal activities.

42.     On or about July 16, 2014, Lameira sent an email and a collection of documents to RenuEn's finance partner, Aqua Finance. Upon information and belief, Lameira sent this email and documents in an attempt to interfere with RenuEn's business relationship with Aqua Finance, and in turn, cause RenuEn to go out of business. In his email to Aqua Finance, Lameira made false accusations of illegal conduct by RenuEn, and requested that Aqua join Lameira in a lawsuit against RenuEn.

43.     Included in the collection of documents sent to Aqua Finance was a docket report printout from a previous matter in which Nemes was involved. Added to this printout, however, was the type-written text "Extremely concerned that RENU is a complete scam and not just inept managment [sic]." The inclusion of this additional text on the docket report gave the impression that there had been an official notation that RenuEn and Nemes were being investigated for fraudulent activity. Also included in the materials sent to Aqua Finance were false statements that RenuEn and its officers were "setting up a long scam on investors and the government." These statements are false because neither RenuEn nor any of its officers or employees were involved in any such "scam."

44.     On or about July 17, 2014, on information and belief, Lameira sent an email to the Florida Department of Business and Professional Regulation falsely accusing RenuEn of illegal acts, including that RenuEn had installed air conditioners that were "NOT FSEC approved" and that RenuEn did not have a license "to sell or install solar attic fans." Both of these statements were false because the air conditioners sold by RenuEn were not required to be FESC approved

12

and RenuEn, with its business partners, had all necessary licenses to sell and install solar attic fans. Lameira's July 17, 2014 email also falsely stated that RenuEn's Chief Legal Officer, Alex Kim, was not recognized by the Florida Bar. Kim, however, is an Authorized House Counsel registered with and recognized by the Florida Bar. A copy of this email is attached hereto as **Exhibit 1.**

45.    Lameira and AGES then mailed a letter to RenuEn's vendors and customers falsely stating that RenuEn had installed non-FESC approved air conditioners, that RenuEn lacked a license to sell or install solar attic fans, and that Kim was practicing law without a license.

46.    Lameira further continued his assault on RenuEn by instructing AGES employees to contact all of RenuEn's customers and urge them to complain to Aqua Finance about RenuEn. Lameira similarly instructed AGES employees to contact RenuEn's customers and ask them if they would like to join a class action lawsuit against RenuEn. In one instance, Lameira called a RenuEn customer named James Callahan and made the false accusation that RenuEn had scammed him and asked him to join in a purported class action suit. After convincing James Callahan that RenuEn was nothing but a scam, Lameira subsequently proceeded to have attorney Cathy Lerman call Mr. Callahan and make the same fraud allegations and encourage him to join in a class action lawsuit against RenuEn. As a result, of Lameira's and AGES's communications with its customers, RenuEn received numerous calls from confused customers inquiring about a non-existent class action suit against the company.

<u>AGES And Lameira Recruit Other Parties To Attack RenuEn</u>

47.    Upon information and belief, in early August 2014 Lameira and AGES decided to enlist the help of other parties to bolster their efforts to discredit RenuEn and usurp its market

share in the renewable and efficient energy field. Specifically, Lameira contacted an attorney based in South Florida, Cathy Lerman ("Ms. Lerman") of the Lerman Law Firm, a former business associate of RenuEn's, Walter Kritsky ("Kritsky"), and Does 1-50. This newly-formed group (the "Anti-RenuEn Group") was determined to ruin the reputations of RenuEn and its officers by any means possible, including by posting false information on the Internet and by contacting RenuEn's current and future customers and urging them to file frivolous complaints with law enforcement agencies and stop paying their bills.

48.     Kritsky was a solar contractor and former business partner of RenuEn's, and had previously filed a lawsuit against RenuEn based on a claim for breach of contract. Upon information and belief, Kritsky is participating in the Anti-RenuEn Group in retaliation for what he believes was RenuEn's breach of contract.

49.     Upon information and belief, Kritsky provided the Anti-RenuEn Group with significant assistance in accomplishing their scheme to harm RenuEn by personally planning and participating in the series of online attacks against RenuEn. Attached hereto as **Exhibit 2** is a July 13, 2014 text message from Lameira stating that Kritsky "is the guy we're going to get it [sic] on our side against Jeff[.] he's [sic] got huge deep pockets and has a vengeance against Jeff already[.]"

50.     Additionally, Kritsky communicated and plotted with Lameira, Lerman, and others via email regarding their attempt to destroy RenuEn and disrupt its business. One such email is attached hereto as **Exhibit 3**. One of the recipients of this email subsequently informed Plaintiffs that Kritsky played an active role in the Anti-RenuEn Group's campaign to defame RenuEn.

*The Lerman Blog Posts and False Ripoff Reports*

51.     The first volley from the Anti-RenuEn Group came in the form of an August 15, 2014 post by Ms. Lerman to a blog she operates on the Lerman Law Firm website, http://lermanfirm.com/blog/ (the "First Lerman Blog Post"). This post was titled "LERMAN LAW FIRM ANNOUNCES INVESTIGATION OF RENUEN CORPORATION (OTC: RENU)" and can be found at the following URL: http://lermanfirm.com/blog/lerman-law-firm-announces-investigation-of-renuen-corporation-otcrenu/. A copy of the First Lerman Blog Post is attached hereto as **Exhibit 4.**

52.     The First Lerman Blog Post claimed that Ms. Lerman had been contacted by "Victims of Renuen" who were unhappy with the installation of solar energy systems in their homes. Ms. Lerman then urged "ANY CONSUMER WHO HAS EXPERIENCED PROBLEMS WITH RENUEN OR THEIR ALIAS 'ENERGY SOLUTIONS OF FLORIDA' SHOULD FILE A BBB [Better Business Bureau] REPORT AND FILE A CONSUMER COMPLAINT WITH THE FLORIDA ATTORNEY GENERAL." The First Lerman Blog Post then ended with a solicitation requesting that RenuEn's customers contact her. Upon information and belief, Ms. Lerman included RenuEn's stock symbol or ticker symbol, "RENU", in order to discourage investors from purchasing RenuEn stock.

53.     Three days after the First Lerman Blog Post, on August 18, 2014, Ms. Lerman published another post on her blog (the "Second Lerman Blog Post"). The Second Lerman Blog Post was titled "CONSUMER ALERT-ENERGY SOLUTIONS OF FLORIDA IS NOT A LEGAL CORPORATION OR D/B/A OF RENUEN CORPORATION (OTC:RENU)" and can be found at the following URL: http://lermanfirm.com/blog/consumer-alert-energy-solutions-of-

florida-is-not-a-legal-corporation-or-dba-of-renuen-corporation/.  A copy of the Second Lerman Blog Post is attached hereto as **Exhibit 5**.

54.     The Second Lerman Blog Post contains a number of false statements.  First, the post states that Energy Solutions of Florida is not a d/b/a of RenuEn.  In fact, Energy Solutions of Florida is a name under which RenuEn does business and this name is registered with the Florida Secretary of State as a fictitious name of RenuEn.  A copy of this registration is attached hereto as **Exhibit 6**.   Second, the post falsely states that customers who sign contracts with Energy Solutions of Florida "ARE CONTRACTING WITH A NON-EXISTENT ENTITY." This is false because customers signing contracts with Energy Solutions of Florida are entering into contractual relationships with RenuEn, a duly registered Florida corporation.

55.     The Second Lerman Blog Post then, like the First Lerman Blog Post, urged RenuEn's customers to contact and file complaints with the Florida Attorney General and the Better Business Bureau.  The Second Lerman Blog Post stated that RenuEn's customers could file such complaints on the basis of "INFERIOR WORK, FAILURE TO PEROFRM WORK, ILLEGAL    FILING    OF    PERMITS    ON    RESIDENTIAL    PROPERTIES, MISREPRESENTATION AS TO THE SERVICES TO BE PERFORMED, ELDER ABUSE, AND OTHER ILLEGAL ACTIVITY."  The post then ended with a solicitation for "VICTIMS" of RenuEn to contact Ms. Lerman and the Lerman Law Firm.

56.     Taken aback by Ms. Lerman's unfounded attacks, RenuEn's in-house counsel, Kim, sent Ms. Lerman an email on August 18, 2014 informing her that RenuEn had become aware of the announcement and that RenuEn "would like to cooperate with [her] investigation" and was "willing to provide information, documents, or answer any concerns of customer complaints."  However, because Ms. Lerman and the other members of the Anti-RenuEn Group

had the singular goal of harming RenuEn rather than resolving any actual customer complaints, Ms. Lerman brusquely responded, "I am not interested in your information."   A copy of this August 18, 2014 correspondence is attached hereto as **Exhibit 7**.

57.    The Anti-RenuEn Group's next attack came on another website, www.ripoffreport.com.  On August 25, 2014, a user using the alias Willie Bucks, who upon information and belief, is actually a member of the Anti-RenuEn Group, published a post regarding RenuEn at the following URL: http://www.ripoffreport.com/r/Jeff-Nemes/Jupiter-Florida-3347/Jeff-Nemes-Energy-Solutions-of-Florida-Renuen-Corporation-Alex-Kim-J-Charles-Nemes--1172101 (the "First Ripoff Report").   A copy of the First Ripoff Report is attached hereto as **Exhibit 8**.

58.    The First Ripoff Report contained a number of false statements. The report alleged that RenuEn was a "scam," that RenuEn and Nemes were engaged in "stock fraud" on the "public stock exchange," that RenuEn was "installing WITHOUT a contractor's license," that Nemes has been "lying about the equipment being used," and "threaten[ing] the consumer with physical harm if they don't pay." All of these statements are false. RenuEn is not a scam, a fraud or involved with stock fraud, RenuEn, with its business partners, has had the necessary licenses for all of its installations, and Nemes has never lied to customers about the equipment sold by RenuEn and or threatened any customer with physical harm.   These statements are nothing but outright falsehoods made by a competitor to harm RenuEn.

59.    In posting the First Ripoff Report, the Anti-RenuEn Group did not limit itself to attacks solely against Nemes and RenuEn.  It also stated that Kim was "practicing law without a license," that Kim threatened customers with "physical harm," and that Kim is a "criminal with a checkered background." These statements are false because Kim is an Authorized House

Counsel registered with and recognized by the Florida Bar, he has never threatened RenuEn's customers with physical harm, and he is not a "criminal" by any definition, as he has never been arrested or convicted of any crime.

60.     The First Ripoff Report then falsely claimed that Ms. Lerman was "heading a class action lawsuit against Renuen," instructed RenuEn's customers to contact Ms. Lerman, instructed RenuEn's customers to contact the Florida Bar to report Kim for allegedly practicing law without a license, contact the Florida Attorney General, contact the SEC, contact the Jupiter, Florida police department, and contact the Florida Department of Business and Professional Regulation. These statements are clearly designed to cause RenuEn's customers to believe that RenuEn is engaged in illegal activity and to interfere with their relationship with RenuEn.

61.     On August 26, 2014, a user using the alias "American Veteran", who upon information and belief, is actually a member of the Anti-RenuEn Group, posted another review to www.ripoffreport.com (the "Second Ripoff Report"). The Second Ripoff Report can be found at the following URL: http://www.ripoffreport.com/r/Dongjoon-Alexander-Kim/Jupiter-Select-StateProvince-33477/Dongjoon-Alexander-Kim-from-Renuen-Corporation-RENUPK-Calls-Returning-Army-Veteran-a-Bab-1172478 and a copy of this report is attached hereto as **Exhibit 9**.

62.     The Second Ripoff Report continued the Anti-RenuEn Group's efforts to defame and disparage RenuEn and its officers. The report falsely claimed to be written by a former RenuEn employee and recount his tale of quitting the company. The Second Ripoff Report stated that Nemes instructed RenuEn's sales representatives to target "the elderly, low income whites and blacks" because "they are predominantly uneducated or senile and they are easy to close (i'm [sic] not kidding that is an actual quote from Jeffry [sic] Nemes the Renuen CEO),"

that RenuEn is engaged in "stock fraud," that RenuEn "is nothing more than a criminal enterprise," that RenuEn was "installing solar packages WITHOUT A LICENSE TO DO SO," that when the former employee informed Nemes that he was quitting, Nemes "looked out to the parking lot and said, 'Is that your Ni@er [sic]wife in the car?'", that Kim stated to the employee, "Go on boy, walk home ni&#er [sic], you and your baby killing veteran cronies aren't man enough to work for Renuen." The Second Ripoff Report also included a photograph of Kim taken from RenuEn's website, and stated in its title, "Dongjoon Alexander Kim from Renuen Corporation RENU.PK Calls Returning Army Veteran a Baby Killer!"

63.    All of the statements listed in the paragraph above are false. Nemes has never instructed RenuEn's sales representatives to target the elderly, or low income whites and blacks, and in fact, prior to July 11, 2014, RenuEn relied on the sales and marketing efforts of AGES and solely functioned as a wholesale product and installation provider. During that time, all sales and marketing was performed by AGES and its employees. The Second Ripoff Report is also false because RenuEn is not engaged in stock fraud or any other form of criminal enterprise, RenuEn and its business partners had the proper licenses for all of its solar installations, and the supposed racist and anti-military veteran statements attributed to Nemes and Kim were never made. The Second Ripoff Report is a wholly fabricated "report" by Lameira, AGES and the other members of the Anti-RenuEn Group designed to harm RenuEn's ability to retain sales persons and attract new customers.

64.    On August 27, 2014, a user using the alias Theresa Tilton, upon information and belief, again believed to be Lameira or another member of the Anti-RenuEn Group, posted another "report" to www.ripoffreport.com (the "Third Ripoff Report"). The Third Ripoff Report can be found at http://www.ripoffreport.com/r/ENERGY-SOLUTIONS-OF-FLORIDA/Jupiter-

Florida-33477/ENERGY-SOLUTIONS-OF-FLORIDA-Renuen-Corporation-Jeffrey-Nemes-Alex-Kim-CONSUMER-ALER-1172676 and a copy of this report is attached hereto as **Exhibit 10**.

65.     The Third Ripoff Report contained the same false allegations as the Second Lerman Blog post, namely that "ENERGY SOLUTIONS OF FLORIDA IS NOT A LEGAL CORPORATION OR D/B/A OF RENUEN CORPORATION," that customers were "CONTRACTING WITH A NON-EXISTENT ENTITY," and that customers should contact the BBB and the Florida Attorney General to report RenuEn's alleged illegal filing of permits, misrepresentations, elder abuse, and other illegal activity.

66.     These allegations in the Third Ripoff Report are false because Energy Solutions of Florida is a registered d/b/a of RenuEn, RenuEn's customers have not contracted with a "non-existent entity," and RenuEn has not engaged in any illegal activity or elder abuse.

67.     Also on August 27, 2014, a user using the alias "John Fiore," believed upon information and belief to be a member of the Anti-RenuEn Group, posted an additional review on www.ripoffreport.com (the "Fourth Ripoff Report").   This report can be found at http://www.ripoffreport.com/r/Renuen-Corporation/Jupiter-Florida-33477/Renuen-Corporation-Fraudulently-Using-Resigned-Contractors-License-to-Scam-Florida-Resi-1172739 and a copy of the Fourth Ripoff Report is attached hereto as **Exhibit 11**.

68.     The Fourth Ripoff Report falsely stated that RenuEn was involved in a "fraud" and a "scam," that it "conned" its customers, that there was a "class action lawsuit raging against Jeffrey Nemes...[and] Dongjoon Alexander Kim," and that Kim was "under heavey [sic] investigation for practicing law for several months in the state of Florida without a license."

The report then directed readers to contact Ms. Lerman because she was allegedly "guiding this Class Action Lawsuit against Renuen, their SR. executives and the Board of Directors."

69.     All of these statements from the Fourth Ripoff Report are false because RenuEn is not a fraud, scam or otherwise involved in conning its customers, there is no class action against RenuEn or its officers, and there is no investigation against Kim. The Fourth Ripoff Report was published solely to disparage RenuEn and give AGES an unfair advantage in the marketplace.

70.     Continuing their attempt to disrupt RenuEn's business, the Anti-RenuEn Group published yet another post on August 27, 2014, this time on Ms. Lerman's blog, http://lermanfirm.com/blog/ (the "Third Lerman Blog Post"). The Third Lerman Blog post can be found at http://lermanfirm.com/blog/consumer-and-elder-abuse-fraud-alert-on-renuen-corporation-otc-renu-please-read/ and a copy of this post is attached hereto as **Exhibit 12**.

71.     In the Third Lerman Blog Post, Ms. Lerman falsely accused RenuEn of engaging in "ELDER ABUSE" and "FRAUD," and that RenuEn was a completely fake company and that no customer should honor their existing contracts with RenuEn or sign a new contract with RenuEn. Specifically, Lerman stated, "DO NOT PAY RENUEN ANY MONEY AND DO NOT SIGN ANY DOCUMENTS FOR THEM. THESE JOBS ARE ALL FAKE, NOT PERMITTED, THE EQUIPMENT IS NOT USABLE AND THE ENTIRE SOLAR SYSTEM SALE IS A SCAM. THE ENTIRE COMPANY IS A SCAM AND IS IN THE NATURE OF A PONZI SCHEME" (emphasis in original). Ms. Lerman then directed RenuEn's customers to contact the Florida Attorney General, the FBI, the BBB, and local contractor licensing boards.

72.     Ms. Lerman's statements are false because RenuEn is not engaged in any fraud or elder abuse, none of its jobs are "fake," its equipment is, in fact, usable, and it is not a scam or a Ponzi scheme. RenuEn is a legitimate company which sells actual renewable energy and energy

efficient products. Ms. Lerman's false accusations are nothing but a malicious attempt to assist her co-conspirators, Lameira, AGES, Kritsky, and Does 1-50 in their efforts to push RenuEn out of the renewable energy market in Florida.

73. On September 2, 2014, Ms. Lerman posted two additional attacks against RenuEn. First, Lerman posted a message the social media platform Twitter. Ms. Lerman has a Twitter account with the name "@CathyLerman" and she used this account to post the following message on September 2, 2014 (the "First Lerman Twitter Post"), "CONSUMER ALERT – RENUEN (RENU) IS A SCAM. CONSUMERS SHOULD NOT SIGN ANY DOCUMENTS OR AGREE TO PAY FOR SERVICES." The First Lerman Twitter Post can be found at https://twitter.com/CathyLerman/status/506936097528877056. A collection of Ms. Lerman's posts to Twitter, including the First Lerman Twitter Post, is attached hereto as **Exhibit 13**.

74. The First Lerman Twitter Post is false because RenuEn is not a scam. Further, the First Lerman Twitter post is damaging to RenuEn because it encourages RenuEn's current customers to withhold payment for services provided by RenuEn, and directs prospective customers not to do business with RenuEn.

75. Upon information and belief, Lerman and/or other members of the Anti-RenuEn Group have paid third parties, including Does 1-50, to "retweet" or share Lerman's posts on Twitter, and to post other copycat messages disparaging RenuEn, Nemes, and Kim. Examples of such tweets using the #RenuEn hashtag are attached hereto as **Exhibit 14**.

76. Also on September 2, 2014, Ms. Lerman created another post on her blog, http://lermanfirm.com/blog/ (the "Fourth Lerman Blog Post"). The Fourth Lerman Blog Post is located at http://lermanfirm.com/blog/renuen-otcrenu-consumer-warning-false-advertising-elder-abuse-deceptive-trade-practices/ and a copy of this post is attached hereto as **Exhibit 15**.

77.     The Fourth Lerman Blog Post falsely stated that RenuEn was engaged in "FALSE ADVERTISING," "ELDER ABUSE," and "DECEPTIVE TRADE PRACTICES," that "RENUEN IS A FRAUDULENT SCHEME" that RenuEn "IS A SCAM," and instructed customers that they should "NOT PAY THIS COMPANY OR SIGN ANY PAPERS AGREEING TO THE JOB OR THE QUALITY OF THEIR WORK." The Fourth Lerman Blog Post then stated that, "CONSUMERS WHO HAVE CONTRACTED WITH RENUEN SHOULD CONTACT THE FRAUD UNIT FOR THE FLORIDA ATTORNEY GENERAL, FILE A BBB COMPLAINT, CONTACT YOUR LOCAL FBI OFFICE, CONTACT YOUR LOCAL POLICE AGENCY AND SEND AN EMAIL TO THE SEC IN MIAMI AT MIAMI@SEC.GOV DETAILING YOUR INVOLVEMENT WITH RENUEN. IN THE RE: PUT RENUEN (RENU)."

78.     The Fourth Lerman Blog Post is false because RenuEn is not engaged in false advertising, elder abuse, or deceptive trade practices. Additionally, RenuEn is not a "scam" or a "fraudulent scheme." The Fourth Lerman Blog Post is a direct attempt by Lerman and the Anti-RenuEn Group to defame RenuEn, interfere with its business relationships, and put it out of business.

79.     Continuing their online smear campaign, the Anti-RenuEn Group moved back to the website www.ripoffreport.com for their next attack. On September 4, 2014, a user using the alias "renuenscam," who, upon information and belief, is actually Lameira or another member of the Anti-RenuEn Group, posted a "review" of RenuEn that claimed to be from a former customer (the "Fifth Ripoff Report"). The Fifth Ripoff Report can be found at http://www.ripoffreport.com/r/Renuen-Corporation/Jupiter-Florida-33477/Renuen-Corporation-

Fraudulently-Using-Resigned-Contractors-License-to-Scam-Florida-Resi-1172739 and a copy of this report is attached hereto as **Exhibit 16**.

80.     The Fifth Ripoff Report claimed to be from a customer of RenuEn. The report stated that RenuEn "stole loan money" from the customer, that Nemes personally visited the customer's home and sold him a solar room fan and insulation for his roof, that Nemes encouraged the customer to increase his loan amount to cover repairs to his roof, that no repairs have been made to the customer's roof, and that when the customer followed up via email with Nemes, Nemes informed him that he did not work for RenuEn.

81.     All of the claims in the Fifth Ripoff Report are false because the report is not from an actual RenuEn customer. As an initial matter, in his role as CEO of RenuEn, Nemes does not personally make sales to RenuEn's customers, much less visit their homes to make sales. Simply stated, Nemes did not visit this fictitious customer's home and sell him a solar room fan and insulation. Given that the underlying sale never occurred, Nemes also did not respond to an email from this fictitious customer and tell the customer that he did not work for RenuEn. The entire report is a fabrication by Lameira and the Anti-RenuEn Group.

82.     Continuing their efforts to use the Fifth Ripoff Report to disparage RenuEn, on September 12, 2014, a user using the alias "Renuen Scam", who is actually, upon information and belief, Lameira or another member of the Anti-RenuEn Group, published a comment to the Fifth Ripoff Report. *See* **Exhibit 16**. This comment falsely alleged that RenuEn sells "USELESS SOLAR SYSTEMS," that it is "A CRIMINAL FRAUDULENT SCHEME," that RenuEn "IS A SCAM" and that current customers should not pay RenuEn and that potential customers should not do business with RenuEn. The comment also instructed RenuEn's customers to contact various law enforcement agencies and the Lerman Law Firm.

83.     The statements in the comment posted by "Renuen Scam" are false because RenuEn does not sell "useless" solar systems nor is it scam or engaged in a criminal fraudulent scheme.

84.     On September 5, 2014, yet another false report was posted to www.ripoffreport.com, by, upon information and belief, a member of the Anti-RenuEn Group, using the alias "Fredy Jobs" (the "Sixth Ripoff Report").  The Sixth Ripoff Report can be found at               http://www.ripoffreport.com/r/Renuen-Corporation/Jupiter-Florida-33477/Renuen-Corporation-Rene-Woodhead-RenuEn-Corps-Director-of-Communications-Scams-Habitat-1174738 and a copy of this report is attached hereto as **Exhibit 17**.

85.     The Sixth Ripoff Report falsely accused RenuEn, Nemes, Kim, Lynn Nemes, and RenuEn's Director of Communications, Rene Woodhead of "scam[ming] the public once more by using the name Habitat for Humanity."  The report also claimed that RenuEn and its employees "want to steal money through donations" to Habitat for Humanity.

86.     The Sixth Ripoff Report has no basis in fact.  RenuEn's Director of Communications, Rene Woodhead ("Woodhead") and her boyfriend, Jimmy Rivers ("Rivers"), partnered with RenuEn and Habitat for Humanity to raise funds for Habitat for Humanity through Woodhead's and Rivers' efforts to reach the highpoint of all 48 contiguous states.  As part of this effort, donations could be made *directly* to Habitat for Humanity through Habitat for Humanity's website, https://share.habitat.org/tothetop50.   RenuEn pledged to match the fundraising efforts up to $25,000 in goods and services for Habitat for Humanity.  Thus, there was no possible way for RenuEn or its employees to "steal money through donations" or otherwise "scam" the public.  This was an effort by RenuEn and its employees to raise money for charity.

87.     Another similar post concerning this charitable fundraising effort was also posted on www.ripoffreport.com on September 5, 2014, again upon information and belief by the Anti-RenuEn Group, using the alias "Von Dickens" (the "Seventh Ripoff Report"). The Seventh Ripoff Report can be found at http://www.ripoffreport.com/r/Habitat-for-Humanity/Jupiter-Florida-33477/Habitat-for-Humanity-Rene-Woodhead-RenuEn-Corps-Director-of-Communications-Scams-Habit-1174754 and a copy of this report is attached hereto as **Exhibit 18.**

88.     Like the Sixth Ripoff Report, the Seventh Ripoff Report alleged that "RenuEn Corp's Director of Communications Scams Habitat for Humanity" and that RenuEn and its employees "want to steal money through donations." The report also included a picture of Woodhead taken from RenuEn's website.

89.     The Seventh Ripoff Report's statements are false for the same reasons that they were false with respect to the Sixth Ripoff Report—RenuEn and its employees were raising money for charity and had no intention, or ability, to steal any donations that were made to Habitat for Humanity.

90.     In response to the post, Rivers posted a comment to the Seventh Ripoff Report on September 12, 2014 explaining that he and Woodhead were simply wilderness enthusiasts who found a way to combine their passion for the outdoors with philanthropy, and that they were not involved in any fraudulent scheme. *See* **Exhibit 18**.

91.     In response, a user with the alias "John Fiore," who is actually upon information and belief, a member of the Anti-RenuEn Group, responded by posting a comment alleging that RenuEn "is steeling [sic] money from the innocent ELDERLY," bill[ing] for fraudulently sold

solar kits that don't even work, engaged in "ELDERLY ABUSE," and that RenuEn is "one of the biggest PONZI SCHEMES to ever hit our region." *See* **Exhibit 18**.

92.     None of these allegations by "John Fiore" are true.  RenuEn is not stealing money from anyone, does not sell fraudulent products, is not engaged in elderly abuse, and is not a Ponzi scheme.  The Sixth and Seventh Ripoff Reports and the comment by "John Fiore" are malicious acts by the Anti-RenuEn Group to damage the RenuEn name.

93.     Upon information and belief, a member of the Anti-RenuEn Group, using the alias "Edward Dean," posted another false review on www.ripoffreport.com on September 5, 2014 (the "Eighth Ripoff Report").  This report can be found at http://www.ripoffreport.com/r/Renuen-Corporation/Jupiter-Florida-33477/Here-is-how-the-Renuen-Ponzi-Scheme-Works-THE-TRUTH-ABOUT-RENUENCORPORATION-Jupiter-Fl-1174622 and a copy of this report is attached hereto as **Exhibit 19**.

94.     The Eighth Ripoff Report alleged to provide the "TRUTH" about the "Renuen Ponzi Scheme."  This report made false statements that RenuEn is a "fraud" and a "Ponzi Scheme," that RenuEn's "JOBS ARE ALL FAKE, NOT PERMITTED" that the equipment sold by RenuEn "IS NOT USABLE," and that "THE ENTIRE COMPANY IS A SCAM AND IS IN THE NATURE OF A PONZI SCHEME."  The report then instructed RenuEn's customers not to pay RenuEn and to call the Florida Attorney General's Fraud Hotline, the FBI, the BBB, and the local contractor licensing board to file complaints.

95.     In addition to the false statements concerning RenuEn as a corporate entity, the Eight Ripoff Report also targeted Kim individually.  The report stated that Kim practiced law without a license in Florida, that he "cheated his way through" law school, and that he made "statements such as, and I quote 'I don't care if the wrong equipment was installed, pay your bill

BIT@H [sic] or we'll take your house!' and an affrican [sic] american military veteran who just returned from Iraq who quit after finding out the fraud got this from Alex when this gentleman quit, 'Is that your Ni@er Bit@h [sic] in the care [sic] waiting for you? Talk about this to anyone and we'll beat her ass! Now get out of my office you filthy BABY Killer.'"

96.     None of these statements regarding RenuEn or Kim are true.  RenuEn is not involved, in any way, with a fraud or Ponzi scheme, its jobs are not "fake," and its solar energy equipment is real and very "usable."  With respect to Kim, he is a registered in house counsel in Florida, he did not "cheat his way through" law school, and he did not make any of the abhorrent statements attributed to him in the Eighth Ripoff Report.

97.     Following up on the Eighth Ripoff Report, upon information and belief, a member of the Anti-RenuEn Group, using the alias "John Fiore," posted a comment to the Eighth Ripoff Report on September 12, 2014 titled "Congressman Patrick Murphy and Jupiter City Council Does Nothing To Stop Renuen Corp / Energy Solutions of Florida Ponzi Scheme!" *See* **Exhibit 19**.  This comment included what have at this point become the common false claims by the Anti-RenuEn Group: that RenuEn was engaged in a "Ponzi Scheme," "Elderly ABUSE," and that "there is a CLASS ACTION LAWSUIT against this company."  The comment also made false accusations against Kim, notably that he is practicing law without a license, that he has called veterans ""Baby Killers," "Army Scumbags," "Uneducated UniformWearing [sic] Mind Midgets," that he has "called respectable African American Veterans and their Wives the 'N' word," and that "[h]e is one of the main purpetrators [sic] of the Ponzi Scheme and Elderly Abuse."  The comment also foreshadowed an online attack aimed at RenuEn that would shortly follow on Twitter.  The comment stated:

> Want to help? It's easy!1. find Renuen tweets by going to twitter and typing in:
> Renuen, #Renuen, Jeffrey Nemes, David Deleon, Hugh Larry Clark,

#PonziScheme, Renuen Scam, Alex Kim, Alex Dongjoon Kim and either retweet or cut and paste the tweet and tweet from your account2. contact our local police, Mayor and the "DO NOTHING" Congressman Patrick Murphy and tell them to put an end to this.

Shortly after this comment, countless Twitter posts containing false accusations against RenuEn started appearing using the "hashtags" #Renuen and #PonziScheme.[1]

98.     These comments are false because RenuEn is not running a Ponzi scheme, there is no class action lawsuit filed against it, Kim is a registered in-house counsel, and he has never made the derogatory and racist comments attributed to him by John Fiore/Lameira's comment.

99.     Sadly, the smear campaign continued throughout September.  On September 11, 2014, Ms. Lerman posted an update to her blog titled "CRIMINALS AT IT AGAIN-RENUEN IS NOW SELLING UNDER THE NAME OF RENUEN ENERGY SOLUTIONS BY RENUEN" (the "Fifth Lerman Blog Post").  The Fifth Lerman Blog Post can be found at http://lermanfirm.com/blog/criminals-at-it-again-renuen-is-now-selling-under-the-name-of-energy-solutions-by-renuen-renu/ and a copy is attached hereto as **Exhibit 20**.

100.     The Fifth Lerman Blog Post falsely stated that "RENUEN IS TARGETING ELDERLY PEOPLE IN THE ORLANDO AREA" and that RenuEn was "SELLING USELESS SOLAR SYSTEMS."  The post also stated that "ANYONE CONTACTED BY ANYONE AT FROM RENUEN SHOULD CONTACT THEIR LOCAL POLICE DEPARTMENT IMMEIDATLY AND ALSO CONTACT FDLE IN ORLANDO" because "THIS IS A CRIMINAL FRAUDULENT SCHEME."  These statements are false because RenuEn did not specifically target the elderly or sell "useless" solar systems, and RenuEn is not a criminal or fraudulent enterprise.  Upon information and belief, the purpose of the Fifth Lerman Blog post

---

[1]     A "hashtag" is a method for sorting and locating messages on Twitter by topic.  A user publishes text with a "#" followed by a word or other text.  When someone searches for this term, he or she will be directed to all other posts using the same hashtag.  For example, if a Twitter user searched for #apples, he or she will be directed to all other Twitter posts that use the hashtag #apples.

was to hurt RenuEn's standing in the Florida business community, interfere with its business relations, push RenuEn out of business, and allow AGES to expand its market share.

101. On September 12, 2014, a user using the alias "Jenny Ford," who upon information and belief, is actually a member of the Anti-RenuEn Group, posted a review on www.ripoffreport.com (the "Ninth Ripoff Report"). This report can be found at http://www.ripoffreport.com/r/Ponzi-Schemes/Jupiter-Florida-33477/Ponzi-Schemes-Renuen-Corp-named-in-The-10-Scummiest-Ponzi-Schemes-Ever-Jupiter-Florida-1176460 and a copy is attached hereto as **Exhibit 21.**

102. The Ninth Ripoff Report purported to be a list of the "10 Scummiest Ponzi Schemes Ever." Unsurprisingly, the Anti-RenuEn Group included RenuEn in this "top ten list." The Ninth Ripoff Report falsely stated that RenuEn was a "Ponzi Scheme," engaged in "Elderly Abuse," was involved in a "Stock Scam" and the "bribery of local officials", was "Steeling [sic] from Children," "threatening the Elderly," and "Extorting from the Jupiter, FL community." The report also falsely accused Kim of being a convicted felon with "multiple arrests and prison sentances [sic]" to his name.

103. These statements from the Ninth Ripoff Report are false because RenuEn is not a Ponzi scheme, it is not a stock scam, and it has never bribed local officials, stolen from children, threatened the elderly, or engaged in extortion. Moreover, Kim has never been arrested or convicted of any crime.

104. On September 13, 2014, a user using the alias "John Fiore", believed to be, upon information and belief, a member of the Anti-RenuEn Group, posted a comment on the website www.complaintsboard.com regarding RenuEn and its Chief Financial Officer, Anthony Pascucci (the "Pascucci Post"). A copy of the Pascucci Post can be found at

http://www.complaintsboard.com/complaints/renuen-corporation-anthony-pascucci-cfo-of-renuen-corporation-caught-in-ponzi-scheme-amp-class-action-lawsuit-ooop-c726599.html and a copy of the Pascucci Post is attached hereto as **Exhibit 22.**

105.    The Pascucci Post falsely accused RenuEn of being a "scam," a "PONZI SCHEME" and stated that "[i]f you invested or purchased from Renuen Corporation or any of their fake shell companies such as: Energy Solutions by Renuen, Energy Solutions of Florida, Renuen Financial Solutions, Go Green Save Green or a dozen others you have directly participated in funding a criminal enterprise that extends to Trenton, New Jersey as far back as 2005 with everything from Extortion, racketeering, drug dealing, bribery, [and] bilking[.]" The Pascucci Post accused Anthony Pascucci of being "the financial architect behind the money laundering, securities fraud and [RenuEn's alleged] Ponzi Scheme" and participating in "SECURITIES FRAUD."   The post ended with a request for "VICTIMS OF RENUEN" to contact the Lerman Law Firm.

106.    The Pascucci Post is false because RenuEn is not a Ponzi scheme or other criminal enterprise, and it is not involved in extortion, racketeering, drug dealing, bribery or bilking. Additionally, Anthony Pascucci is in no way involved in any money laundering, Ponzi schemes or any form of securities fraud.  The Pascucci Post is an example of the Anti-RenuEn Group's expanding their smear campaign to attack RenuEn's officers.

107.    On September 17, 2014, a user with the alias "Dario Bates", believed to be, upon information and belief, a member of the Anti-RenuEn Group, posted another comment to the Fifth Ripoff Report. *See* **Exhibit 16**. This comment falsely stated that RenuEn was using its business partner SDI Solar, Inc. as a "Fraud Scam Front for Renuen Ponzi Scheme," that RenuEn was "under investigation for Elderly Abuse, Securities Fraud, performing renovations with a

fraudulent contractors [sic] license and…extortion and racketeering." The comment then falsely stated that RenuEn is managed by "cocain [sic] dealers," is a "criminal enterprise," is "the center of a Class Action Lawsuit by legal heavy weight Cathy Jackson Lerman, Esq.", that RenuEn is "steeling [sic] from poverty stricken Elderly People," using fake contractors, threatening its customers with "physical harm," planning to scam Habitat for Humanity, and under investigation by the SEC. The comment concluded with a request for readers to contact the Lerman Law Firm, and stated, "So whether you buy from Renuen Corporation, Energy Solutions of Florida, Energy Solutions by Renuen or SDI Solar, Inc, you are still giving money to an organization that has already to be [sic] proven a complete Ponzi Scheme and Scam."

108.    None of these statements are true, as RenuEn is not running a Ponzi Scheme or any other fraudulent activity, it has not used a fraudulent contractor's license, it is not the subject of a class action lawsuit, it is not managed by drug dealers, it has not stolen money from the elderly, it has not threatened its customers with physical harm, it is not planning to "scam" Habitat for Humanity, and it is not under investigation by the SEC. This comment is yet another meritless and malicious attack by the Anti-RenuEn Group.

109.    This comment then went on to attack Kim personally. The author alleged that Kim threatened to "hurt [RenuEn's customers] physically and even plant drugs on their adult children and then call the cops," that Kim "hates our returning veterans," and that "[o]n 9-11-2014 he called a group of war veterans 'Baby Killers' and referred to an African American Iraq veteran  who quit Renuen as a 'Stupid…N-word' and said his wife was a 'Hair Hat Wearing Hooker.'" All of these statements are false as Kim has never threatened to harm RenuEn's customers, plant drugs on their children, make any disparaging comments towards veterans or make the racist statements attributed to him in the comment.

110.    On September 16, 2014, the Anti-RenuEn Group lobbed yet another set of false accusations at RenuEn and Nemes by having Ms. Lerman publish another article on her blog (the Sixth Lerman Blog Post").    The Sixth Lerman Blog Post can be found at http://lermanfirm.com/blog/what-do-jeffrey-charles-nemes-renuen-and-scott-rothstein-have-in-common/ and a copy of this post is attached hereto as **Exhibit 23**.

111.    The Sixth Lerman Blog Post falsely stated that Nemes was running, through RenuEn, a "MULTIMILLION DOLLAR PONZI SCHEME[]," that "NEMES SOLD AND STILL SELLS FAKE SOLAR SYSTEMS (TARGETING FLORIDA'S ELDERLY) AND WORTHLESS PUBLICLY TRADED STOCK," and that Nemes is running a "FRAUDULENT INVESTMENT SCHEME[]." These statements are wholly false as RenuEn is not a Ponzi Scheme, it sells actual—not fake—solar systems, it does not target the elderly, and Nemes does not sell "worthless stock."

*The Anti-RenuEn Group Expands to Include a Local Police Officer*

112.    Apparently not getting the traction or media attention they hoped for, the Anti-RenuEn Group decided to increase the visibility of their attacks by recruiting a detective in the Coral Springs Police Department to make false accusations on their behalf.  This detective, however, was not an uninterested third party.  Rather, he was the husband of Cathy Lerman, Detective Steven H. Lerman.

113.    Upon information and belief, on or about September 18, 2014, Mr. Lerman caused a "FRAUD ALERT" to be posted to the Facebook page operated by the Coral Springs Police Department (the "Coral Springs Fraud Alert").  This "alert" alleged that RenuEn was targeting the elderly and that RenuEn's "solar installations were either not completed, were done

33

improperly or were never started. The jobs that some work was done, used equipment not meant for the type of installation performed." The "alert" then went on to discuss Kim's alleged role in threatening RenuEn's "victims," and ended with the warning, "Please talk to your friends, neighbors and family members who could potentially be at risk for this fraud." When concerned citizens began to comment on the Coral Springs Fraud Alert, upon information and belief, Mr. Lerman caused the following comment to be posted on behalf of the Coral Springs Police Department: "Yes, it is a penny stock company based out of Jupiter. They are conning those most vulnerable in our community and are under investigation." A copy of this post (now removed) is attached hereto as **Exhibit 24**.

114. In addition to the Coral Springs Fraud Alert, upon information and belief, Mr. Lerman also caused a "FRAUD ALERT" to be posted to the Coral Springs Police Department's Twitter account, @CoralSpringsPD (the "Coral Springs Twitter Post"). The Coral Springs Twitter Post read, "FRAUD ALERT – Renuen Corporation solicited Florida residents, targeting the elderly, through telephone..." and then included a hyperlink to the Coral Springs Fraud Alert. A copy of the Coral Springs Twitter Post (now deleted) is attached hereto as **Exhibit 25**.

115. The Coral Springs Fraud Alert was quickly referenced and copied by the Anti-RenuEn Group in other Internet postings. For example, on September 20, 2014, a post was made to www.ripoffreport.com by a user with the alias "Andy Gibbs," who upon information and belief is actually a member of the Anti-RenuEn Group (the "Tenth Ripoff Report"). This report can be found at http://www.ripoffreport.com/r/RenuEn-Corps/Jupiter-Florida-33477/RenuEn-Corps-Fraud-Alert-by-Coral-Springs-Police-RenuEn-Corps-Jeffrey-Nemes-and-Dong-1178059 and a copy of this report is attached hereto as **Exhibit 26**.

116. Similarly, on September 21, 2014, a post was made to the website http://investorshub.advfn.com ("iHub"), an online message board where investors discuss publicly traded companies such as RenuEn. This post is available at http://investorshub.advfn.com/boards/read_msg.aspx?message_id=106476203 and a copy is attached hereto as **Exhibit 27.**

117. Both the Tenth Ripoff Report and the iHub post were titled "RenuEn Corp's Fraud Alert by Coral Springs Police RenuEn Corp's Jeffrey Nemes and Dongjoon Alexander Kim Fraud Alert by Coral Springs Police Jupiter Florida." The posts then copied the text of the Coral Springs Fraud Alert and provided a link to the Coral Springs Police Department Facebook page.

118. The Coral Springs Fraud Alert was also seen by a producer for the West Palm Beach, Florida television station WPTV. On September 19, 2014, during discussions regarding the scheduling of an interview for a news story regarding RenuEn, a producer from WPTV wrote to Kim and stated, "[w]e know there have been allegations made about Mr. Nemes that are in the public arena already *including the recent Facebook post from the Coral Springs Police Department.*" (emphasis added). RenuEn was not aware of the Facebook posting prior to receiving this email from WPTV. Clearly, the Anti-RenuEn Group's attempts at legitimizing their false accusations through unpermitted law enforcement communications were having their intended effect.

119. Ms. Lerman, having now added her husband to the Anti-RenuEn Group's membership, also continued her attacks on RenuEn and Nemes, posting two statements on her Twitter account on September 18, 2014, stating that "RENUEN AND ALL OF IT"S [sic] FAKE SUBSIDIARIES ARE PART OF A PONZI SCHEME. DO NOT INEVEST WITH ANY

ENTITY RELATED TO RENUEN" and "WHICH LAW ENFORCEMENT AGENCY IN FLORIDA IS GOING TO ARREST JEFF AND LYNN NEMES?????????" These two posts can be found at https://twitter.com/CathyLerman/status/512753017959882752 and https://twitter.com/CathyLerman/status/512753341508505600. *See* **Exhibit 13**.

120.    On September 22, 2014, after learning of the Coral Springs Fraud Alert, Nemes and Kim went to the Coral Springs Police Department and were told that the post was not authorized, and that there was no investigation into RenuEn.

121.    After being told of the recent online smear campaign being waged by the Anti-RenuEn Group, including Ms. Lerman, the Coral Springs Police Department informed Nemes and Kim that Ms. Lerman's husband was a detective with the police department but that he had recently been away on medical leave.

122.    Realizing now that Mr. Lerman had joined the Anti-RenuEn Group, Nemes and Kim filed an internal affairs complaint against Mr. Lerman.    The results of the Coral Springs Police Department's internal affairs investigation have not yet been made public.

123.    Although the Coral Springs police department immediately removed the fraud alert from their Facebook page, the intended damage to RenuEn was already accomplished, as all of the Anti-RenuEn Group's false fraud accusations against RenuEn now appeared to be legitimized by a law enforcement agency.    Despite its deletion by the Coral Springs Police department, copies of the Fraud Alert were still available on the Internet as of October 15, 2014. In addition to the websites mentioned above, numerous third parties on Twitter posted messages using the #Renuen hashtag and linked to the Coral Springs Fraud Alert.

*Continued Cyber-Attack by the Anti-RenuEn Group*

124.     Although one might assume that the Anti-RenuEn Group would cease its online attacks after their illegal use of law enforcement communication channels was discovered, the Anti-RenuEn Group was undeterred and continued it its efforts to disparage and cause damage to RenuEn and its employees.

125.     On September 19, 2014, Ms. Lerman posted yet another defamatory article on her blog (the "Seventh Lerman Blog Post"). The Seventh Lerman Blog Post is located at http://lermanfirm.com/blog/lets-set-the-record-straight-on-jeff-nemes-and-renuen-renu-there-is-no-money-for-the-victims/ and a copy of this post is attached hereto as **Exhibit 28**.

126.     The Seventh Lerman Blog Post falsely claimed that RenuEn, Jeff Nemes, and Lynn Nemes were running a "CLASSIC PONZI SCHEME" and that they "HAVE ALREADY BLOWN THREW ALL OF THE MONEY FROM THE VICTIMS AND INVESTORS." Ms. Lerman continued her attack, stating that "NEMES IS RUNNING OUT OF MONEY" and that "WHATEVER MONEY NEMES, HIS WIFE, AND HIS COHORTS HAVE STOLEN IS LONG GONE."

127.     The Seventh Lerman Blog Post is false because, as stated many times already, neither Nemes nor RenuEn is involved with a Ponzi scheme, and he has not stolen any money from RenuEn's customers or investors.

128.     Also on September 19, 2014, Ms. Lerman posted a follow-up to the Seventh Lerman Blog Post (the "Eighth Lerman Blog Post"). The Eighth Lerman Blog Post is available at http://lermanfirm.com/blog/there-may-be-a-viable-class-action-suit-for-renuen-victims-but-not-against-renuen/ and a copy is attached hereto as **Exhibit 29**.

129.    The Eighth Lerman Blog Post clearly stated Ms. Lerman's and the Anti-RenuEn Group's intentions, to "STOP NEMES AND HIS COHORTS FROM DOING BUSINESS." Ms. Lerman then made false statements that RenuEn is a "PONZI SCHEME," that Nemes has engaged in the "THEFT OF MILLIONS OF DOLLARS FROM UNSUSPECTING VICTIMS," and that RenuEn is "WORTHLESS AND ON THE VERGE OF COLLAPSE."

130.    None of these statements are true, as there is no Ponzi scheme, there has been no theft, and RenuEn is not worthless or on the verge of collapse.

131.    On September 23, 2014, Ms. Lerman continued the Anti-RenuEn Group's attack on RenuEn, posting another article on her blog (the "Ninth Lerman Blog Post"). The Ninth Lerman Blog Post is available at and a copy is attached hereto as **Exhibit 30**.

132.    The Ninth Lerman Blog Post falsely stated that RenuEn was a Ponzi Scheme and that the reader should "CONTACT YOUR LOCAL POLICE AGENCY IF YOU ARE CONTACTED BY THIS COMPANY" and advised readers that they should "NOT CONTRACT WITH ANYONE THAT HAS DONE BUSINESS WITH JEFF NEMES OR RENUEN."

133.    Because RenuEn is not engaged in a Ponzi scheme, these statements are false and designed to mislead readers into believing that RenuEn is a criminal enterprise and that customers and investors should avoiding doing business with RenuEn.

134.    Determined to press on with the Anti-RenuEn Group's attacks, Ms. Lerman posted two more articles on her blog on September 26, 2014 (the "Tenth Lerman Blog Post" and the "Eleventh Lerman Blog Post"). The Tenth and Eleventh Blog Posts are available at http://lermanfirm.com/blog/attention-renuen-renu-sales-personnel-and-employees-are-you-aware-that-nemes-is-blaming-everything-on-you/ and http://lermanfirm.com/blog/a-message-to-

38

renuen-renu-and-their-counsel-alexander-kim/ and they are attached hereto as **Exhibits 31 and 32.**

135. The Tenth and Eleventh Lerman Blog Posts contained the same, tired falsehoods peddled by the Anti-RenuEn Group. Ms. Lerman stated that RenuEn had committed "MULTIPLE FELONIES," that RenuEn sold "unpermitted solar system[s]," that RenuEn's "whole operation is a scam, a Ponzi scheme and as the SEC uses the term a "pump and dump" on RENU stock," that RenuEn sells "worthless solar systems," and that RenuEn is engaged in fraud and forgery.

136. These statements from the Tenth and Eleventh Lerman Blog Posts are false because RenuEn has committed no felonies, has not committed any fraudulent acts, has not engaged in "pump and dump" or any other stock fraud, sells actual renewable energy products, and is not engaged in a Ponzi scheme. These accusations remain false no matter how many times the Anti-RenuEn Group makes them.

137. Finally, on October 6, 2014, a user with the alias "Brett Chance," who upon information and belief is actually a member of the Anti-RenuEn Group, posted a false review on www.ripoffreport.com (the "Eleventh Ripoff Report"). The Eleventh Ripoff Report can be found at http://www.ripoffreport.com/r/Energy-Solutions-of-Florida-/Jupiter-Florida-33477/Energy-Solutions-of-Florida-aka-Renuen-Corporation-FinallyCaught-for-Fraud-Forgery-in-1181150 and a copy is attached hereto as **Exhibit 33.**

138. The Eleventh Ripoff Report falsely stated that "Energy Solutions of Florida aka Renuen Corporation" was "FinallyCaught [sic] for Fraud & Forgery in Florida."

139. These statements are false because RenuEn has not engaged in fraud or forgery, much less been "caught" engaging in fraud or forgery.

39

*Other Online Attacks*

140.    Although the much of the online smear campaign waged against RenuEn, Nemes and Kim has appeared on www.ripoffreport.com, Ms. Lerman's Blog and Ms. Lerman's Twitter account, there have been a large number of posts made, upon information and belief, by members of the Anti-RenuEn Group on other websites.

141.    For example, on the website www.scamorg.com, there is a "review" of Renuen.com that was created on August 25, 2014, the same date as the First Ripoff Report (the "Renuen.com Review"). The Renuen.com Review contains many anonymous comments, most of which are direct copies of the false allegations made in the Ripoff Report postings and the Lerman Blog. The Renuen.com Review can be found at http://www.scamorg.com/renuen-com-ec and a copy is attached hereto as **Exhibit 34**.

142.    The website www.scamorg.com also has a "review" of "RenuEn Corp" published on October 15, 2014 (the "RenuEn Corp Review"). The RenuEn Corp Review is found at http://www.scamorg.com/renuen-corp-7c and a copy is attached hereto as **Exhibit 35**.

143.    The RenuEn Corp Review purports to be from a RenuEn customer, but upon information and belief, it was actually posted by a member of the Anti-RenuEn Group. The RenuEn Corp Review claims to set forth the representations made by a RenuEn salesman and the problems with the eventual installation and lack of promised rebates. The review then concludes with the author stating that he or she is "sick of the threats to my physical well being by Jeff nemes [sic] and Alexander Kim." Because Nemes and Kim have never made threats to any customers, Plaintiffs are confident that the author of this post is not an actual customer.

144.    Two other websites believed created by the Anti-RenuEn Group to defame and interfere with RenuEn's business are http://renuenscam.weebly.com/ and

http://renuenscam1.weebly.com/ (the "Weebly Pages").   Copies of the Weebly Pages are attached hereto as **Exhibit 36**.

145.   The Weebly Pages contain a number of anonymous comments dating from September 2, 2014 to October 6, 2014.  They include many of the same false accusations that were published on the Ripoff Reports and the Lerman Blog, such as RenuEn and its officers being involved in fraud, tax fraud, elderly abuse, a "scam on Florida's Elderly," Ponzi schemes, stock fraud, that a "Class Action Lawsuit is now underway," that RenuEn is a "criminal enterprise," that RenuEn is scamming Habitat for Humanity and that Kim is a "serial convicted felon" and has referred to "injured Military Veterans as 'Baby Killers' and calls African American Employees and their families the 'N' word."   As previously stated, all of these statements are false and were published with the intent to harm RenuEn and its officers and employees.

146.   The Anti-RenuEn Group also posted similar false statements on the following websites:

- http://renuen-corporation.pissedconsumer.com/renuen-otc-renu-consumer-warning-false-advertising-elder-abuse-deceptive-trade-practices-20140905530252.html;

- http://renuen-corporation.pissedconsumer.com/renuen-corp-and-alex-kim-and-jeffrey-nemes-and-david-burrows-strike-again-another-client-ripped-off-in-florida-20140916534928.html;

- http://renuen-corporation.pissedconsumer.com/let-s-set-the-record-straight-on-jeff-nemes-and-renuen-20140919536326.html;

- http://renuen-corporation.pissedconsumer.com/why-renuen-s-alex-kim-s-threats-to-mom-he-should-not-be-allowed-onboard-of-a-company-20140930540615.html;

- http://renuen-corporation.pissedconsumer.com/scammed-by-renuen-corp-energy-solutions-of-florida-two-part-series-provides-important-steps-for-people-to-follow-before-signing-contracts-20141007543517.html;

- http://www.pinterest.com/jamminsuerocali/renuen-corporation-scam/;

- http://jefferynemes.skyrock.com/;

- http://www.wattpad.com/70449393-truth-about-renuen-corp;

- http://www.wattpad.com/71454848-renuen-corp; and

- www.scam.com.

147.   The Anti-RenuEn Group has also attempted to damage RenuEn's stock price by publishing defamatory statements regarding RenuEn and its shareholders on an online message board used by investors to discuss RenuEn stock, http://investorshub.advfn.com/Renuen-Corp-RENU-11335/.  Attached hereto as **Exhibit 37** is an August 20, 2014 text message from Lameira in which he provides a link to Ms. Lerman's blog, and then states, "[o]ur attorney wants me to post this on Renuens [sic] investor hub online.  do you know how to do that?"  Lameria then sent a photograph of Nemes wearing handcuffs and stated, "Jeff needs to get used to these bracelets. Lol."

*Further Acts of Intimidation by the Anti-RenuEn Group*

148.   The Anti-RenuEn Group did not limit their attacks against RenuEn and its officers to Internet postings.  They have also engaged in threats of physical violence, extortion, and other forms of intimidation.

149.   For example, on July 23, 2014, Ashley Combs ("Ms. Combs"), a former AGES employee who informed RenuEn of AGES's calling RenuEn's customers and urging them to lodge complaints with Aqua Finance, received a series of threatening text messages from an individual claiming to be AGES's attorney.  These text messages told Ms. Combs that she was improperly interfering with AGES, and that the attorney would be reporting criminal violations to the United States Attorney's office pursuant to 18 U.S.C. §§ 1831 and 1832.  Upon

information and belief, this threat was meant to intimidate Ms. Combs and coerce her to remain silent regarding AGES's deceptive trade practices.

150.    Continuing the Anti-RenuEn Group's intimidation tactics, on September 14, 2014, an AGES employee named Josh Leidolf ("Leidolf") sent an email to Nemes demanding that Nemes pay him over $8,500.00, or else Leidolf would attack Nemes on the Internet. Specifically, Leidolf threatened Nemes by stating, "I have a pretty strong online presence. I also know how to use advanced focus keywords, meta tags and SEO to my advantage in any way that I see fit." Leidolf then sent Nemes a follow-up email threatening to make statements that would land Nemes in prison. Specifically, Leidolf stated, "Cathy Lerman, The District Attorney and the FBI are on to you. Wanna tell me all about the forged NOC's? That's prison time pal. Again. I know everything and a ton of other journalists that would love to cover this story and spread the word..." Leidolf ended his email with the following threat, "What does matter to me is the money that you owe and *you will pay me or you will see what type of business person I can be*." (emphasis added). A copy of this email correspondence is attached hereto as **Exhibit 38**.

151.    Subsequently, on September 26, 2014, two unidentified men showed up at the RenuEn offices and stated that they were looking to collect money owed to Lameira. Upon information and belief, these men were acting on behalf of Lameira and AGES. The two men proceeded to threaten Nemes, Lynn Nemes, and Kim with bodily harm. The men stated to Nemes, Lynn Nemes and Kim that they had to "Pay up or die." A police report was filed regarding this incident on September 26, 2014. A copy of this police report is attached hereto as **Exhibit 39**.

152. This pattern of intimidation through physical threats continued on October 3, 2014, when Jack Owens, Lameria's business partner and owner of AGEC, and another individual came to former AGES Chief Operating Officer Nick Holt's house and proceeded to accost Mr. Holt and threaten his life. Mr. Holt was working for RenuEn at this point and had provided RenuEn with significant information regarding the Anti-RenuEn Group's scheme. Jack Owens and the other individual told Mr. Holt that they knew where he lived, and that if he continued to "fuck[] with their family's money" they would kill him. Upon information and belief, Jack Owens and the other unknown individual threatened Mr. Holt in order to intimidate him into keeping silent regarding the Anti-RenuEn Group's attacks on the Plaintiffs.

153. Upon information and belief, apart from using threats to intimidate RenuEn and its employees, the Anti-RenuEn Group is also attempting to use Mr. Lerman's status as a police officer to convince RenuEn's customers that RenuEn is engaged in criminal activity. Acting as a member of the Anti-RenuEn Group, Mr. Lerman has contacted RenuEn's customers and inquired into whether they have filed a complaint with other law enforcement agencies. For example, in an August 27, 2014 email exchange between Lameira, Ms. Lerman, and with other Defendants copied, Lameira asked if Ms. Lerman if she or her "husband ever got a hold of the customer in the Tampa area," to which Ms. Lerman replied, "Steve (my husband) spoke to them directly." By using his status as a Coral Springs Police Detective and calling RenuEn's customers, Mr. Lerman gave credence to the Anti-RenuEn Group's false criminal accusations against RenuEn.

## COUNT ONE
### (Violation of the Lanham Act, 15 U.S.C. § 1125 – False Designation of Origin)

154. Plaintiffs hereby incorporate by reference all allegations in its Complaint as though the same were fully set forth herein.

155. This cause of action is for false designation of origin under 15 U.S.C. § 1125(a)(1)(A).

156. RenuEn has valid and subsisting trademarks in full force and effect, as it frequently uses its marks "RenuEn Corporation," "RenuEu," "Energy Solutions," "Energy Solutions by RenuEn," and "Energy Solutions of Florida" in commerce.

157. Defendants Lameira and AGES willfully and knowingly violated RenuEn's trademarks in commerce by making false representations to consumers as to the affiliation between AGES and RenuEn, including, but not limited to, misrepresenting that AGES employees were RenuEn employees, displaying RenuEn's logo on the door of the AGES office and on the AGES website, displaying RenuEn's license number on the AGES website, using RenuEn's logo on "pizza certificates" distributed by AGES to customers, misrepresenting to customers that AGES was authorized to sell RenuEn products after July 11, 2014, using RenuEn-branded marketing materials with customers after July 11, 2014, having customers sign RenuEn/Energy Solutions contracts after July 11, 2014, and deceiving customers into thinking that they were signing contracts for RenuEn products and services when the customers were actually contracting with an unrelated entity.

158. Though their fraudulent misrepresentations, Defendants have created a likelihood of confusion amongst consumers, caused mistake, and/or deceived consumers into incorrectly believing that an affiliation and/or connection exists between AGES and RenuEn. Customers have been falsely led to believe that AGES employees were representatives of RenuEn when, in fact, they were not, and customers have contracted with AGES and/or a business partner of AGES while believing that they were contracting with RenuEn.

159.   Lameira and AGES's misrepresentations regarding RenuEn's products and services infringed on RenuEn's trademarks.

160.   As a result, RenuEn has suffered damages including, but not limited to, loss of sales and goodwill, diminution in stock value, and damage to its existing and potential business relations.

161.   Pursuant to 15 U.S.C. § 1117(a), RenuEn is entitled to an award of attorneys' fees.

<div align="center">

**COUNT TWO**
**(Violation of the Lanham Act, 15 U.S.C. § 1125 – False Advertising)**

</div>

162.   Plaintiffs hereby incorporate by reference all allegations in its Complaint as though the same were fully set forth herein.

163.   This cause of action is for false advertising under 15 U.S.C. § 1125(a)(1)(B).

164.   RenuEn has valid and subsisting trademarks in full force and effect, as it frequently uses its marks "RenuEn Corporation," "RenuEu," "Energy Solutions," "Energy Solutions by RenuEn," and "Energy Solutions of Florida" in commerce.

165.   AGES, AGEC, Lameira, and Kritsky are in direct competition with RenuEn in the efficient and renewable energy industry.

166.   AGES, AGEC, Lameira, and Kritsky willfully and knowingly violated Plaintiffs' trademarks in commerce by engaging in a campaign of false advertising in which they misrepresented the nature, characteristics, and qualities of RenuEn's goods, services and commercial activities.   This false advertising campaign included, but was not limited to, the numerous online postings described above in the Complaint at www.ripoffreport.com, www.twitter.com,             www.pissedconsumer.com,             www.scamorg.com,

http://investorshub.advfn.com, http://lermanfirm.com, www.skyrock.com, www.scam.com, and www.weebly.com.

167.    The false advertisements created by AGES, AGEC, Lameira, and Kritsky misrepresented RenuEn's products and services and infringed RenuEn's trademarks.

168.    As a result, RenuEn has suffered damages including, but not limited to, loss of sales and goodwill, diminution in stock value, and damage to its existing and potential business relations.

169.    RenuEn has also had to expend time and money countering the false advertisements.

170.    Pursuant to 15 U.S.C. § 1117(a), RenuEn is entitled to an award of attorneys' fees.

### COUNT THREE
**(Civil violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962)**

171.    Plaintiffs hereby incorporate by reference all allegations in its Complaint as though the same were fully set forth herein.

172.    Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted the affairs of Defendants' unlawful Anti-RenuEn Group enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c).

173.    Defendants' Anti-RenuEn Group enterprise is an association-in-fact with the meaning of 18 U.S.C. § 1961(4), consisting of Lameira, AGES and its employees and agents, AGEC and its employees and agents, Kritsky, Ms. Lerman, Mr. Lerman, the Lerman Law Firm, and Does 1-50.   The Anti-RenuEn Group enterprise is an ongoing organization created to effectuate a pattern of racketeering activity.

47

174.    Defendants have exerted control over the Anti-RenuEn Group enterprise and the management of the affairs of the Anti-RenuEn Group enterprise.

175.    Defendants' scheme involves an ongoing series of false written and oral communications.  Many of these false statements rely on the Defendants remaining anonymous or using aliases to hide their true identities.  To further their scheme, Defendants have threatened witnesses with knowledge of the Anti-RenuEn Group enterprise's conduct.  The purpose of this scheme is to harm Plaintiffs and provide the Defendants with pecuniary gain.

176.    Defendants have conducted and participated in the affairs of the Anti-RenuEn Group enterprise through a pattern of racketeering activity that includes acts indictable under 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1512 (tampering with a witness), and Fla. Stat. § 836.05 (threats and extortion).  At all relevant times, these activities significantly affected interstate commerce.

177.    Defendants' used numerous mail and wire communications to create and manage the Anti-RenuEn Group enterprise.

178.    Defendants' use of mail and wire communications included, but was not limited to, mailing fraudulent letters to RenuEn's vendors and customers with the intent of having RenuEn's vendors and customers contract with AGES and/or AGEC rather than RenuEn; sending fraudulent electronic communications to RenuEn's finance partners; using telephone communications to deceive RenuEn's customers into unknowingly contracting with AGES; communications with Does 1-50 to facilitate the dissemination of false information regarding Plaintiffs; transmitting through electronic means the numerous fraudulent statements posted by Defendants on the Internet regarding Plaintiffs; and communications amongst Defendants in furtherance of the Anti-RenuEn Group enterprise.

179.    Defendants have tampered with witnesses in violation of 18 U.S.C. § 1512 by making threats against former AGES employees Ashley Combs and Nick Holt because they provided Plaintiffs with information regarding the Anti-RenuEn Group enterprise.    Upon information and belief, the purpose of these threats was to induce Ms. Combs and Mr. Holt into withholding testimony and/or documentary evidence related to the Anti-RenuEn Group enterprise.

180.    Defendants have violated Fla. Stat. § 836.05 by threatening to accuse Ms. Combs of criminal offenses, by threatening Mr. Holt with physical harm or death, by threatening to accuse Nemes of a criminal offense and to injure his reputation if he did not pay an AGES employee a sum of money, and by threatening Nemes, Lynn Nemes, and Kim with physical harm or death if they did not pay AGES and Lameira a certain sum of money.    These threats were made with the intent to extort money and/or pecuniary advantage from Nemes, Lynn Nemes, and Kim, and with the intent to prevent Ms. Combs and Mr. Holt from assisting Plaintiffs in their investigation of the Anti-RenuEn Group enterprise.    Each of these violations is punishable by imprisonment for more than one year.

181.    The conduct of Defendants and the Anti-RenuEn Group enterprise described above constitutes "racketeering activity" within the meaning of 18 U.S.C. § 1961(1). Defendants' control and management of the Anti-RenuEn Group enterprise to routinely conduct its transactions in the manner described above constitutes a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

182.    Defendants' have derived income through their illegal actions as members of the Anti-RenuEn Group enterprise.    Lameira, AGES, and AGEC have used the Anti-RenuEn Group's deceptive acts to receive funds from customers who were misled into believing that they

were contracting with RenuEn. Lameira, AGES, AGEC, and Kritsky have, upon information and belief, increased their sales of energy efficient and renewable energy products and/or services as a result of the racketeering activities described above. Defendants Cathy Lerman and Steve Lerman have, upon information and belief, derived income through the racketeering activities described above via the retention of new clients by the Lerman Law Firm.

183.    Plaintiffs have sustained injuries that were directly and proximately caused by Defendants' racketeering activity described above.

184.    By virtue of these violations of 18 U.S.C. § 1962(c), Defendants are liable to Plaintiffs for three times the damages they have sustained, plus the costs of this lawsuit, including reasonable attorneys' fees.

## COUNT FOUR
### (Defamation *Per Se*)

185.    Plaintiffs hereby incorporate by reference all allegations in their Complaint as though the same were fully set forth herein.

186.    By making defamatory statements regarding RenuEn's business to potential and current customers, both on the numerous websites listed above and by emailing and mailing false statements to RenuEn's customers, vendors, business partners, and government agencies, Defendants have published materially false statements of fact concerning RenuEn's business.

187.    By making defamatory statements regarding Nemes, both on the numerous websites listed above and by emailing and mailing false statements to RenuEn's customers, vendors, business partners, and government agencies, Defendants have published materially false statements of fact alleging that Nemes is engaged in criminal conduct amounting to a felony and that he has characteristics incompatible with the proper exercise of his lawful business.

Additionally, the false comments made by the Defendants regarding Nemes subject him to hatred, disgust, ridicule and contempt.

188.    By making defamatory statements regarding Kim, both on the numerous websites listed above and by emailing and mailing false statements to RenuEn's customers, vendors, business partners, and government agencies, Defendants have published materially false statements of fact alleging that Kim is engaged in criminal conduct amounting to a felony and that he has characteristics incompatible with the proper exercise of his lawful business. Additionally, the false comments made by the Defendants regarding Kim subject him to hatred, disgust, ridicule and contempt.

189.    The information published by Defendants is false and the defamatory comments regarding RenuEn, Nemes, and Kim are actionable comments.

190.    Defendants have published unprivileged, defamatory information on the Internet, viewable to at least one third party.

191.    Defendants are at fault for publishing the defamatory information.

192.    The published comments were made with the requisite intent by Defendants to irreparably harm Plaintiffs' professional and business reputations.

193.    The published comments demonstrate an intent to harm Plaintiffs' professional and business reputations and constitute actual malice.

194.    The defamatory comments defamed Plaintiffs on their face and constitute defamation per se.

195.    Defendants' unlawful conduct has caused damage to Plaintiffs, the cost of which to repair will be determined at trial.

196.   Defendants' unlawful conduct has caused and will continue to cause Plaintiffs imminent, irreparable injuries for which there is no adequate legal remedy.   Accordingly, Plaintiffs are entitled to permanent injunctive relief.

197.   As Defendants have placed Plaintiffs' professional and business reputations publicly at issue, Plaintiffs are entitled to a declaratory judgment that Defendants' statements are false.

198.   Plaintiffs are further entitled to recover damages from Defendants for defamation per se.

## COUNT FIVE
### (Defamation)

199.   Plaintiffs hereby incorporate by reference all allegations in its Complaint as though the same were fully set forth herein.

200.   By making defamatory statements regarding Plaintiffs, both on the numerous websites listed above and by calling, texting, emailing, and mailing false statements to RenuEn's customers, vendors, business partners, and government agencies, Defendants have published materially false statements of fact concerning Plaintiffs.

201.   The false information published by Defendants is false and the defamatory comments regarding Plaintiffs are actionable comments.

202.   Defendants have published unprivileged, defamatory information on the Internet, viewable to at least one third party.

203.   Defendants are at fault for publishing the defamatory information and acted with actual malice in publishing the information.

204.   Defendants' unlawful conduct has caused damage to Plaintiffs, the cost of which to repair will be determined at trial.

205.    Defendants' unlawful conduct has caused and will continue to cause Plaintiffs imminent, irreparable injuries for which there is no adequate legal remedy.    Accordingly, Plaintiffs are entitled to permanent injunctive relief.

206.    As Defendants have placed Plaintiffs' professional and business reputations publicly at issue, Plaintiffs are entitled to a declaratory judgment that Defendants' statements are false.

207.    Plaintiffs are further entitled to recover damages from Defendants for defamation.

### COUNT SIX
### (Tortious Interference with Contractual Business Relations)

208.    Plaintiffs hereby incorporate by reference all allegations in its Complaint as though the same were fully set forth herein.

209.    RenuEn had contracts and business relationships with its customers and potential customers, under which RenuEn had legal rights.

210.    The Defendants had knowledge of these contracts and business relationships.

211.    Defendants intentionally and unjustifiably interfered with these contracts and relationships by, among other methods, calling RenuEn's customers and urging them to file complaints against RenuEn with Aqua Finance and various law enforcement agencies, falsely informing RenuEn's customers that they needed to sign new paperwork for better financing when in reality the new paperwork would result in the customers receiving non-RenuEn products and services, causing a false fraud alert to be posted to the Coral Springs Police Department's Facebook and Twitter pages, publishing the many false and defamatory statements set forth above, directly informing customers that they should not pay RenuEn for their existing contracts

and not sign any new contracts with RenuEn, and posting statements online that anyone contacted by RenuEn should immediately contact law enforcement.

212.    As a result of this interference, Plaintiffs have suffered damage.

## COUNT SEVEN
### (Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.211)

213.    Plaintiffs hereby incorporate by reference all allegations in its Complaint as though the same were fully set forth herein.

214.    This claim arises under the laws of the State of Florida.

215.    By making false statements to RenuEn's current and potential customers via their publications on the Internet and their communications directly with RenuEn's customers, including, but not limited to deceiving customers into thinking they were contracting with RenuEn when they were not, Defendants engaged in deceptive acts and unfair trade practices.

216.    As a result of these deceptive acts and unfair trade practices, Plaintiffs have suffered actual harm, as RenuEn's customers have demanded their money back from valid contracts executed with RenuEn, and prospective customers have chosen not to do business with RenuEn, based on the false representations made by the Defendants on the Internet, in emails, in letters, and via telephone conversations.

217.    Pursuant to Fla. Stat. § 510.211, Plaintiffs are entitled to a declaratory judgment that Defendants' trade practices are deceptive and injunctive relief prohibiting Defendants from engaging in such impermissible conduct.

218.    By virtue of Defendants' violation of Florida's Deceptive and Unfair Trade Practices Act, Plaintiffs are entitled to the recovery of the damages caused by Defendant's deceptive and unfair trade practices, including, but not limited to, significant sums expended by

RenuEn arising from the false promises made by AGES and employees to RenuEn customers, as well as their reasonable attorneys' fees and court costs pursuant to Fla. Stat. § 510.2105.

### COUNT EIGHT
**(Aiding and Abetting Tortious Conduct As To Kritsky and Does 1-50)**

219.    Plaintiffs hereby incorporate by reference all allegations in its Complaint as though the same were fully set forth herein.

220.    Defendants Lameira, AGES, AGEC, Ms. Lerman, and Mr. Lerman, by posting false information regarding Plaintiffs on the Internet and intentionally and unjustifiably interfering with RenuEn's contractual relationships, committed a wrongful act.

221.    Defendants Kritsky and Does 1-50 were aware of the wrongful acts of Defendants Lameira, AGES, AGEC, Ms. Lerman, and Mr. Lerman.

222.    By planning and participating in the attacks against Plaintiffs and providing inside information regarding RenuEn to make the attacks seem more credible, Defendants Kritsky and Does 1-50 rendered substantial assistance to Lameira, AGES, AGEC, Ms. Lerman, and Mr. Lerman.

223.    Plaintiffs suffered damage as a result of Kritsky and Does 1-50's providing such assistance to Lameira, AGES, AGEC, Ms. Lerman, and Mr. Lerman.

### COUNT NINE
**(Civil Conspiracy)**

224.    Plaintiffs hereby incorporate by reference all allegations in its Complaint as though the same were fully set forth herein.

225.    Defendants have engaged in an orchestrated scheme to destroy the professional and business reputations of Plaintiffs, interfere with RenuEn's business relationships, and enrich themselves in the process by, among other methods, publishing false statements on the Internet,

contacting RenuEn's customers, and encouraging third parties to file false complaints with various law enforcement agencies.

226.    Each of the Defendants knowingly and willfully agreed among themselves to damage the professional and business reputations of Plaintiffs and entered into an agreement to accomplish these goals.

227.    Each of the Defendants participated in the attacks against Plaintiffs described herein pursuant to and in furtherance of their agreement.

228.    Defendants, through cooperation, encouragement, and ratification, adopted the acts of one another in furtherance of their agreement to destroy the professional and business reputations of Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, RenuEn Corporation, J. Charles Nemes, and Dongjoon Alexander Kim, pray for relief and judgment as follows:

A.    Judgment in favor of Plaintiffs and against Defendants Lameira, AGES, AGEC, Ms. Lerman, Mr. Lerman, the Lerman Law Firm, Kritsky and Does 1-50, in an amount to be determined at trial but exceeding $5,000,000.00 including, but not limited to, compensatory damages, statutory damages, treble damages, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

A.    Preliminary and permanent injunction that issues the following orders against Defendants, their agents, officers, members, managers, employees, representatives, and co-conspirators ("Restrained Parties"):

        i.    Prohibiting the Restrained Parties from any further acts of defamation or publishing of false statements, reviews, advertisements, comments, or information regarding Plaintiffs,

    ii.    Mandating that the Restrained Parties take all action to remove all defamatory, disparaging, libelous, and false statements about Plaintiffs that Defendants posted on the Internet, including requesting that Internet search engines such as Google, Yahoo!, and Bing remove links to the libelous Uniform Resource Locators ("URL") from their search indices,

    iii.    Prohibiting the Restrained Parties from posting or publishing false and defamatory statements, similar to those outlined herein, regarding Plaintiffs on other public-facing Internet websites;

    iv.    Prohibiting the Restrained Parties from using any of Plaintiffs' trademarks in commerce or otherwise representing that an affiliation exists between Plaintiffs and the Restrained Parties;

    v.    Prohibiting the Restrained Parties from engaging in any additional unfair and deceptive trade practices relating to Plaintiffs;

    vi.    Prohibiting the Restrained Parties from contacting Plaintiffs' customers; and

B.    Declaratory judgment that Defendants' statements regarding Plaintiffs are false;

C.    An award of attorneys' fees, costs, and expenses; and

D.    Such other and further relief as the Court deems just, equitable and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand trial by jury on all issues so triable.

October 27, 2014

Whitney C. Gibson, Esq. (*pro hac vice* to be filed)
Adam C. Sherman, Esq. (*pro hac vice* to be filed)
T. Blake Finney, Esq. (*pro hac vice* to be filed)
VORYS, SATER, SEYMOUR & PEASE LLP
301 East Fourth Street, Suite 3500
Cincinnati, Ohio 45202
(513) 723-4000
(513) 852-7825 (fax)
wcgibson@vorys.com
acsherman@vorys.com
tbfinney@vorys.com

Counsel for Plaintiffs

**WILLIAMS LAW FIRM**

Glenn Williams, Esq. B.C.S.
Board Certified in Construction Law
Florida Bar No. 148237
Christian Graham, Esq.
Florida Bar No. 94245
2273 Lee Road, Suite 200
Winter Park, Florida 32789
(407) 926-4100
(407) 926-4105 facsimile
Primary Email:        Glenn@WCLFirm.com
Secondary Email:   Mandy@WCLFirm.com
                              Christian@WCLFirm.com

Local Counsel for Plaintiffs